IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JUSTIN BRADLEY PELOT                                                          PLAINTIFF

V.                                                      CIVIL ACTION NO. 1:15cv00076-SA-DAS

CRITERION 3, LLC, and
GARY CONNER                                                                  DEFENDANTS

MEMORANDUM OPINION

Defendant Criterion 3, LLC, has filed a Motion for Summary Judgment [66] seeking dismissal of Plaintiff's wrongful termination and intentional infliction of emotional distress claims. After reviewing the motion, response, rules and authorities, the Court makes the following findings:

*Factual and Procedural Background*

Criterion 3, LLC ("Criterion") manages a student-housing complex in Starkville, Mississippi known as "the Pointe." The Plaintiff, Justin Pelot, moved into the Pointe in 2014, and in January 2015, the Pointe hired Pelot as a Lease Auditor and Community Assistant, an at-will employee. Pelot's duties included ensuring that credit checks and background checks had been completed for new residents, among other things. He was entrusted with security codes and access to the file room, where other tenants' information was stored.

Pursuant to an agreement between Pelot and Criterion, much of Pelot's salary was applied to his rent at the Pointe, and at the termination of the lease, if there was a deficit, Pelot would have to pay the deficient amount. If there was a surplus, it would be refunded back to him.

In January 2015, Pelot was involved in an accident while driving one of the Pointe's golf carts. He asserts he was told that the Pointe would pay for damages, but Pelot was billed for the

damages later, anyway. Criterion removed the charges from Pelot's account within the month that they were assessed.

At some point, unnamed tenants reported their roommate to the police for smoking marijuana. Criterion management did not evict the roommate, but he was transferred to a different apartment. According to deposition testimony, the roommate acted strangely and shook the back of an employee's chair while picking up the keys for his new apartment. The employee told Pelot about this, and Pelot later reported the incident to Criterion management, referencing it as an assault. Pelot was not present during the incident, but he was upset that the tenant was not evicted from the complex, but only moved into a new apartment.

Then, on February 25, 2015, Pelot's apartment was burglarized. Pelot believed that his roommate and coworker, Jerry Roberts, had stolen a few of Pelot's personal items. Although the burglary was never solved, Roberts was later found by the police to be in possession of marijuana and paraphernalia, which further concerned Pelot.

The Pointe management moved Roberts to a different apartment, but did not fire him from his maintenance job at the Pointe, as charges had not been filed. Pelot became concerned about the safety of the other residents, because he knew that Roberts had master keys for the entire property. Pelot checked Roberts' file and discovered that the Pointe had not completed a background check on Roberts. This discovery sparked Pelot's interest to inquire into several other files, and Pelot learned that another tenant-employee, Quontavious Wilborn, was a registered sex-offender. Wilborn also had master keys for the property.

Pelot then wrote a letter to the owners and managers of the Pointe, including Defendant Gary Conner, wherein he outlined his frustrations with his employment and residency. He also made many accusations, including an alleged non-uniform application of background checks,

unchecked assault accusations, and the failure to protect the safety of its residents. Pelot believed Defendant gave special treatment to minorities by allowing them to pay rent in cash. He alleged that they did not evict certain tenants even though Pelot felt that they were dangerous criminals. Pelot's letter alleged that these failures violated the Fair Housing Act.[1] He threatened to announce publically his accusations through use of local press and media, and he demanded restitution. Soon after receiving this letter, Criterion management sent Pelot a termination and eviction letter via their attorney. Criterion and Conner claimed that Pelot had violated other employees' privacy, that he had improperly threatened Criterion, and that he had not timely reported an assault incident. The letter from the Pointe's attorney described Pelot's accusations as defamatory and unlawful, and it indicated that Criterion would prosecute him if he published tenants' confidential information.

After he was evicted, Pelot's account showed aforementioned charges for the golf cart accident damage, as well as rent deficiencies. Pelot claimed that he worked in excess of his rent charges, but that Criterion never reimbursed him for such charges. Therefore, he alleges that Criterion owed him for the excess. The record shows that Criterion removed the charges as to the golf cart incident from his account and tendered a check for the rent reimbursement, but Pelot claims that Defendant placed both charges on the account in effort to cause distress through intimidation and retaliation.

Plaintiff Pelot's complaints of wrongful termination and intentional infliction of emotional distress are now before the court, as this Court dismissed his Fair Housing Act claim in January 2016. During Plaintiff's deposition, Plaintiff recounted a story where he visited Wilborn's girlfriend after Wilborn had allegedly punched his pregnant girlfriend. Though this

---

[1] Pelot's Fair Housing Act Claims have been dismissed.

accusation was not cited in the letter to Criterion, Plaintiff contends that he was fired in retaliation for reporting this domestic violence to management.

After Criterion moved for summary judgment, the Court noticed Plaintiff with a Federal Rule of Civil Procedure Rule 56(f)(1) Order, requiring Plaintiff to Show Cause as to why any defenses presented by Criterion would not apply to Defendant Gary Conner [82]. Plaintiff responded. The Court has considered Criterion's Motion for Summary Judgment [66], Pelot's Response to the Motion [70], Criterion's Reply [71] and Pelot's Rule 56(f)(1) Response to Order to Show Cause [88].

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37

F.3d 1069, 1075 (5th Cir. 1994) (en banc). Importantly, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis and Discussion*

A. *Wrongful Termination Claim Against Criterion*

Mississippi has adhered to the employment-at-will doctrine since 1858. *Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1088 (Miss. 1987). Under this common law rule, the employment contract between employer and employee may be terminated by either party with or without justification. *HeartSouth, PLLC v. Boyd*, 865 So. 2d 1095, 1108 (Miss. 2003) (citation omitted). However, the Mississippi Supreme Court carved out a two part public policy exception to this general rule in *McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So. 2d 603 (Miss. 1993). Relevant for these purposes, the *McArn* Court concluded, "an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the *employment at will* doctrine from bringing action in tort for damages against his employer." *Id* (*emphasis added*). Since *McArn*, Mississippi courts have clarified certain qualifications for the exception to apply.

In *Hammons v. Fleetwood Homes of Mississippi, Inc.*, 907 So. 2d 357, 360 (Miss. Ct. App. 2005), the Mississippi Court of Appeals ruled that an employee must prove that he complained of employer acts that "warrant the imposition of criminal penalties, as opposed to mere civil penalties" which caused his discharge. *Accord McArn*, 626 So. 2d 603. Additionally, the Fifth Circuit Court of Appeals determined that the whistleblower's "good faith" is only

relevant regarding his efforts to protect the employer from wrongdoing. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 403 (5th Cir. 2005). In *Wheeler*, the court noted, "[a]ppellants' attempt to equate an employee's 'good faith *effort*' in reporting illegal activity, which is protected under the common law exception, with a good faith *belief* that illegal activity is taking place is misplaced." *Id.* (emphasis in original).

The *McArn* exception applies narrowly in two situations exhibiting actual criminal behavior. First, it applies when "an employee is discharged for reporting illegal acts *of his employer* to the employer or anyone else. *Willard v. Paracelsus Health Care Corp.*, 681 So. 2d 539, 542 (Miss. 1996) (emphasis added). Second, the exception has been narrowly extended when a *coworker* engaged in illegal acts, but only when the acts related to employer's business. *See DeCarlo v. Bonus Stores, Inc.* 989 So. 2d 351, 357 (Miss. 2008) (*McArn* permits a retaliatory discharge claim for discharge in retaliation for reporting a co-employee's illegal acts that relate to the employer's business). Therefore, as a threshold issue for avoiding summary judgment, the Plaintiff must demonstrate that the activities that he complained of constituted criminal activity warranting criminal penalties, not just that he believed in good faith as to their criminality. As to coworkers, Plaintiff must also prove that their criminality was related to Criterion's business.

In his letter, Plaintiff first reported that his roommate trespassed and stole from his bedroom and was involved with using and selling drugs. Second, Plaintiff reported that while some tenants were forced to undergo a background check, others were not, resulting in some properties leased to those with criminal histories. Third, Plaintiff alleged that Criterion allowed some tenants to pay rent in cash, but others were forbidden. Finally, Plaintiff alleged that a tenant who had been known to use drugs had assaulted an employee. Though not in the letter, Plaintiff

also claims that a tenant and employee with a criminal history assaulted his girlfriend while living on the property.

Some of these acts are not criminal acts performed by Criterion, even if there might have been an underlying criminal act by a third party. For example, lessors are not required to run background checks, and thus are not required to evict or deny rentals based on criminal history. Furthermore, lessors may accept payment in cash. Therefore, Plaintiff did not report *criminal acts* of his *employer*.

In reporting his roommate and coworker's robbery, trespass, and drug use, Plaintiff did report acts of a coworker that were illegal, but the acts were not conducted while at work and the acts did not relate to the employer's business. Although Plaintiff argues that alleged acts are related to Criterion's business on the basis that the violations were specifically prohibited by the Complex's rules or occurred on the complex property, such an argument fails. See *Crawford v. Bannum Place of Tupelo*, No. 3:10CV54-SA-DAS, 2013 WL 104963 (N.D. Miss. Jan. 8, 2013), *aff'd,* 556 F. App'x 279, 286 (5th Cir. 2014) ("Although Crawford argues that the assault was related to the subject business on the basis that it was specifically prohibited by the applicable code of conduct, such an argument is unpersuasive").

Plaintiff cites to an alleged criminal assault and domestic violence as criminal acts that were reported which led to a retaliatory termination, but this argument fails for several reasons. First, the facts involving the alleged shaking of the chair assault are dubious. As stated, the standard is not whether one believes in good faith that a criminal act is taking place. The good faith is only relevant regarding efforts to protect the employer from wrongdoing. *Wheeler*, 415 F.3d at 403. Even in resolving this factual controversy in favor of the nonmoving Plaintiff by considering it criminal assault, it still does not fit within the exception, as a nonemployee

7

performed it. The same is true for his alleged drug use. Furthermore, assaults do not generally fit within the *McArn* exception if the assault had nothing to do with the business. *See Bailey v. Cooper Lighting Inc.*, 2008 WL 1868568 (S.D. Miss. Apr. 24, 2008) ("alleged simple assault upon the plaintiff cannot be said to relate to or have 'actually had something to do with the business' of [defendant]"); *Dancer v. Bryce Corp.*, 2006 WL 897964 (N.D. Miss. Apr. 4, 2006) (finding assault unrelated to business).

Second, Plaintiff's claim regarding Wilborn's domestic violence could not have been the basis for a retaliatory termination, as it was not reported within the cited letter to Criterion, and Plaintiff has not provided evidence that Criterion retaliated against any other whistleblowing act regarding this incident. Plaintiff must present some evidence tending to establish causation between the reporting of alleged misconduct and the decision process resulting in the discharge. *Dismuke v. City of Indianola*, 32 F. App'x. 126, 4 (5th Cir. 2002) (citing *Hust v. Forrest Gen. Hosp.,* 726 So. 2d 298, 301–02 (Miss. 2000)). In any event, this behavior does not relate to Criterion's business in the manner contemplated by *McArn*, and therefore this allegation is inadequate. *See Bailey,* 2008 WL 1868568 (S.D. Miss. Apr. 24, 2008) (determining that the illegal act has something to do with the business of the company requires more than a tangential relationship).

As the employee criminality does not relate to Criterion's business, Plaintiff's claim of wrongful termination fails to plead a sufficient basis to fit within the *McArn* exception, and Plaintiff cannot overcome summary judgment on this claim.

B. *Intentional Infliction of Emotional Distress Claims Against Criterion*

Defendant Criterion has also requested summary adjudication on Plaintiff's intentional infliction of emotional distress claim.

Under Mississippi law, the standard for a claim of intentional infliction of emotional distress is very high. It requires a showing that: (1) the defendant "acted willfully or wantonly" towards the plaintiff; (2) the defendant's acts are ones "which evoke outrage or revulsion in civilized society;" (3) the acts were "directed at or intended to cause harm" to the plaintiff;" (4) the plaintiff suffered severe emotional distress as a direct result of the acts; and (5) such emotional distress was foreseeable. *J.R. ex rel. R.R. v. Malley*, 62 So.3d 902, 906–07 (Miss. Ct. App. 2011) (citation omitted). With regard to the second element, "the conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Brown v. Inter–City Fed. Bank for Sav.*, 738 So. 2d 262, 264 (Miss. Ct. App. 1999) (internal quotation marks omitted). Liability does not extend to "mere insults, indignities, threats, annoyances, or petty oppressions." *Raiola v. Chevron U.S.A. Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004).

The behavior which Plaintiff alleges caused his emotional distress includes evicting Plaintiff, refusing to pay wages lawfully due to him, making charges against Plaintiff for amounts which they knew not to be lawfully due, and threatening Plaintiff through a letter from an attorney representing that Plaintiff would be prosecuted if he published information it deemed inflammatory.

The Court finds that Plaintiff has failed to plead conduct that ordinarily evokes revulsion in civilized society. Furthermore, Plaintiff has failed to "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial'" on this claim. *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. 2548 (citation omitted); *see also TIG Ins. Co.*, 276 F.3d at 759

(finding that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to show a genuine issue of material fact).

A bare accusation that Defendant's acts were intended to cause harm, without more, cannot substantiate a claim for emotional distress. Though Defendant initially charged Plaintiff's account improperly, evicted him, and had an attorney send a letter, Defendant promptly removed the charges, and Plaintiff has not alleged that the eviction was improper. Furthermore, the simple fact that an attorney was involved does not prove willful, outrageous and revulsive conduct, given Plaintiff's accusations regarding employment. *See Senseney v. Mississippi Power Co.*, 914 So. 2d 1225, 1230 (Miss. Ct. App. 2005) ("Liability for intentional infliction of emotional distress will not be imposed upon an actor doing nothing more than exercising his legal rights"). Damages for intentional infliction of emotional distress are usually not recoverable in mere employment disputes. *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996). "Only in the most unusual cases does the conduct move out of the 'realm of an ordinary employment dispute' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress." *Prunty v. Arkansas Freightways, Inc.,* 16 F. 3d 649, 654 (5th Cir. 1994) (citations omitted). The case at bar does not venture into the classification of "extreme" or "outrageous" merely because Plaintiff's home was also his place of employment.

Even though this dispute may have caused Plaintiff distress, Plaintiff has failed to provide any evidence that the Defendant intentionally or maliciously acted against him in any repugnant way.

*Conclusion*

Plaintiff's claim of wrongful termination fails to plead a sufficient basis to fit within the *McArn* exception, and he has not substantiated his claim for intentional infliction of emotional distress with evidence showing malicious intent. Therefore, Defendant Criterion's Motion for Summary Judgement is GRANTED. Criterion is terminated as a party. The claims for Intentional Infliction of Emotional Distress and Malicious Interference with Employment against Defendant Gary Conner will proceed to trial on Monday, October 31, 2016.

SO ORDERED this 26th day of October 2016.

/s/ Sharion Aycok
UNITED STATES DISTRICT JUDGE